FERDINAND . BOHMER, · JR., Appellant, *v.* LOUIS F. HAFFEN, Commissioner of Street Improvements of the Twenty-third and Twenty-fourth Wards of the City of New York, THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, and THE UNION RAILWAY COMPANY OF THE CITY OF NEW YORK, Respondents.

1. CONSTITUTIONAL LAW — TEST OF STATUTE. The enactments of the legislature must stand if they can be fairly so construed and applied as to avoid conflict with the Constitution.

2. CONSTITUTIONAL LAW — TITLE OF ACT. Where an act of the legislature deals with a subject not expressed in its title, and the unlawful provisions are separable from those that are lawful, and what remains is capable of being executed and stands complete in itself, the court should disregard the unconstitutional part and give force and effect to that which is constitutional.

3. TITLE OF ACT — ACT UNCONSTITUTIONAL IN PART. The unconstitutionality of section 9 of chapter 361 of the Laws of 1863, entitled "An act to authorize the construction of a railway and tracks, in the towns of West Farms and Morrisania," within the meaning of section 16 of article 3 of the Constitution, as embracing a subject not expressed in the title of the act, which section attempted to authorize the construction of railways outside the limits indicated in the title, did not invalidate the eight preceding sections, as they are not so interwoven with it as to be incapable of separation from it without affecting the whole scheme of the act.

4. RAILROAD — FORFEITURE OF THE CHARTER — FAILURE TO COMPLETE. The failure of the railroad company organized under chapter 361 of the Laws of 1863, to complete a road within ten years in the territory described in the unconstitutional ninth section of the act, did not bring it within the Railroad Law (L. 1850, ch. 140, § 47, as amd.), providing that if any corporation shall fail to complete its road within ten years its corporate existence and powers shall cease, even if the latter section be deemed applicable, when a different period is fixed by a special act.

5. TITLE OF ACT — PROVISIONS GERMANE. The consolidation authorized by chapter 340 of the Laws of 1892, entitled "An act to amend chapter 361 of the Laws of 1863, entitled 'An act to authorize the construction of a railway and tracks in the towns of West Farms and Morrisania' and all acts amendatory thereof," is germane to the title of the original act, and, so, to that of the amended act.

6. CONSTITUTIONAL LAW — PRIVATE OR LOCAL BILLS — TITLE AND SUBJECT. Provisions which might have been included in the original act without offending the provision of section 16 of article 3 of the Constitution, that no private or local bills shall embrace more than one subject, and

that shall be expressed in the title, may be incorporated into it subsequently by amendment without a change of title.

7. PRIVATE OR LOCAL BILLS GRANTING RIGHT TO LAY DOWN RAILROAD TRACKS. The prohibition of section 16 of article 3 of the Constitution, against private or local bills granting the right to lay down railroad tracks, is not violated by chapter 340 of the Laws of 1892, authorizing the consolidation of a railroad company organized under chapter 361 of the Laws of 1863, with any street surface railroad within a specified territory, notwithstanding that the consolidation under the act operated to confer upon the consolidated corporation the rights of the constituent corporations to lay tracks.

8. CONSTITUTIONAL LAW — EXCLUSIVE PRIVILEGES. The privilege conferred by chapter 340 of the Laws of 1892, authorizing the consolidation of the railroad company organized under chapter 361 of the Laws of 1863 with any street surface railroad company within specified limits, is an exceptional, but not an exclusive one within the meaning of the Constitution.

9. SURFACE RAILROAD — CONSENT TO LAYING TRACKS. The failure of chapter 340 of the Laws of 1892, authorizing the consolidation of the railroad company organized under chapter 361 of the Laws of 1863, with any street surface railroad company within certain territorial limits, to require the consent of abutting owners and of local authorities to the laying of tracks, did not render it unconstitutional, since the act does not purport to provide the procedure for the building of a road, but merely puts the consolidated corporation in the position of the constituent corporations with the exceptions expressly provided by sections 3 and 4.

10. STREET RAILROAD — CONSENTS. The commissioner of street improvements of the twenty-third and twenty-fourth wards of the city of New York has not such exclusive control of the streets as under the General Railroad Law, section 91 (L. 1890. ch. 565), requires his consent in addition to that of the common council, for the construction of street railroads therein.

11. CONSOLIDATION OF SURFACE RAILROAD COMPANIES. The fact that the other constituent corporations with which the Harlem Bridge, Morrisania and Fordham Railway Company consolidated pursuant to chapter 340 of the Laws of 1892, authorizing it to consolidate its "capital stock and property with the capital stock and property" of any street surface railroad company within certain limits, had not obtained the necessary consents to the building of the roads located by them, does not invalidate the consolidation, since each of them had capital stock and property.

*Bohmer* v. *Haffen*, 35 App. Div. 381, affirmed.

(Argued November 29, 1899; decided January 9, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered Decem-

ber 29, 1898, affirming a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Clarence L. Barber* for appellant. No railroad can be constructed in New York city without authority from the state legislature. Assuming the validity of every statute in question, not one of them confers any such right on the Union Railway Company. (L. 1860, ch. 10; *Beekman* v. *T. A. R. R. Co.*, 13 App. Div. 279; *McClean* v. *W. E. Ry. Co.*, 25 Misc. Rep. 383; *B. H. R. R. Co.* v. *City of Brooklyn*, 152 N. Y. 244; L. 1890, ch. 565, § 90; Const. N. Y. art. 3, § 18; *Matter of R. E. Ry. Co.*, 123 N. Y. 351; *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 264; *Richards* v. *Mayor, etc.*, 16 J. & S. 315.) The charter of the Union Railway Company is absolutely void because chapter 340, Laws of 1892, authorizing the consolidation, is unconstitutional as it grants to a private corporation or association, exclusive privileges, immunities or franchises, is a private or local bill, embraces more than one subject and none of its subjects are expressed in the title. (Const. N. Y. art. 3, § 16; *Colon* v. *Lisk*, 153 N. Y. 188; *Matter of Union Ferry Co.*, 98 N. Y. 139; *People* v. *Bd. Suprs.*, 43 N. Y. 10; *People* v. *Hills*, 35 N. Y. 449; *Matter of Mayor, etc.*, 99 N. Y. 570; *Matter of Paul*, 94 N. Y. 497; *Matter of Town of Flatbush*, 60 N. Y. 398; *Matter of Blodgett's Petition*, 89 N. Y. 392; *Johnston* v. *Spicer*, 107 N. Y. 185; *Astor* v. *A. Ry. Co.*, 113 N. Y. 93.) The Union Railway Company has no power to construct railroads, because the original company was not authorized to consolidate with paper corporations, and, therefore, no consolidation has been effected. (*Cole* v. *M. I. Co.* 133 N. Y. 164.) The consents of the common council granting rights of way in the streets are void, because they constitute a gratuitous alienation of trust property. (*People* v. *O'Brien*, 111 N. Y. 30; *White* v. *M. Ry. Co.*, 139 N. Y. 19; *Potter* v. *Collis*, 19 App. Div. 392; *M. Ry.*

*Co.* v. *Mayor, etc.,* 89 Hun, 429; L. 1882, ch. 410, § 101.) The act authorizing the original corporation is unconstitutional, because only part of the subject is expressed in the title. (*Mayor, etc.,* v. *M. Ry. Co.,* 143 N. Y. 1; *Matter of N. Y. & L. I. B. Co.,* 148 N. Y. 540; *Rathbone* v. *Wirth,* 150 N. Y. 459.) The act of consolidation could not operate as an amendment to the original act, because the original company had long since ceased to exist. (*Farnham* v. *Benedict,* 107 N. Y. 159; *Matter of B., W. & N. Ry. Co.,* 72 N. Y. 245; Booth on St. Railways, 60, § 46; *Matter of B. W., etc., R. R. Co.,* 75 N. Y. 335; 81 N. Y. 69; *B. S. T. Co.* v. *City of Brooklyn,* 78 N. Y. 528; *Matter of L. I. R. R. Co.,* 143 N. Y. 67; *Matter of N. Y. & L. I. Bridge Co.,* 148 N. Y. 540; *Matter of B. El. R. R. Co.,* 125 N. Y. 434; *S. B. & C. R. R. Co.* v. *Lapham,* 43 Hun, 314; *O. R. R. Co.* v. *O. R. R. Co.,* 45 Cal. 365.) The unconstitutional legislation by which it was sought to create the Union Railway Company has not been validated by subsequent acts. (*Rogers* v. *U. Ry. Co.,* 63 N. Y. S. R. 162.) Plaintiff has not conceded the right of the Union Railway Company to operate a railroad, by suing it as a corporation. (*N. Y. C. Co.* v. *Mayor, etc.,* 104 N. Y. 43; *Matter of N. Y. D. Ry. Co.,* 107 N. Y. 42; *People* v. *O'Brien,* 111 N. Y. 30; *Matter of U. El. R. R. Co.,* 112 N. Y. 62; *S. R. F. Co.* v. *Mayor, etc.,* 128 N. Y. 510; *Case* v. *Cayuga Co.,* 68 N. Y. S. R. 632.) The consents issued by the common council are void because all the statutory safeguards of publicity were disregarded, and the favor granted is unlimited and undefined. (*Childs* v. *Smith,* 55 Barb. 45; *N. Y. C. Co.* v. *Mayor, etc.,* 104 N. Y. 1; *Matter of R. T. Comrs.,* 45 N. Y. S. R. 810; *Theberath* v. *Newark,* 57 N. J. L. 309 · *W. J. Co.* v. *C. R. R. Co.,* 53 N. J. Eq. 163; *Concord* v. *H. R. R. Co.,* 65 N. H. 30.) The purpose of the Taxpayers' Act is to prevent not only a fraudulent but also an unauthorized act; not only to nullify a completed but to prevent a threatened alienation of property. (*Rathbone* v. *Wirth,* 150 N. Y. 459; *Williams* v. *Boynton,* 147 N. Y. 426; *Rogers* v. *O'Brien,* 153 N. Y. 357; *Potter* v. *Collis,*

50

19 App. Div. 392 ; *Talcott* v. *City of Buffalo*, 125 N. Y. 280 ; *Ziegler* v. *Chapin*, 126 N. Y. 342 ; *Peck* v. *Belknap*, 130 N. Y. 394 ; *Standart* v. *Burtis*, 46 Hun, 82 ; *Armstrong* v. *Grant*, 56 Hun, 226 ; *Squire* v. *Preston*, 82 Hun, 88.)

*George Hoadly, Edward Lauterbach* and *Herbert R. Limburger* for the Union Railway Company, respondent. Plaintiff cannot maintain this action. If it can be prosecuted at all, it must be by the state, and against the individuals claimed to be usurping the corporate franchises, and not against the body corporate as such. Plaintiff admits the corporate existence of the Union Railway Company, and is, therefore, precluded from attacking the constitutionality of the acts which create it. Corporate existence and corporate franchises were in this case conferred by the same act ; the objections to both are the same, and the plaintiff must succeed or fall as to both· (*People* v. *R. & S. R. R. Co.*, 15 Wend. 113 ; *Lamming* v. *Galusha*, 81 Hun, 247 ; *Coxe* v. *State*, 144 N. Y. 409 ; *People ex rel.* v. *R. H. C. & W. T. & B. Co.*, 20 Barb. 518 ; *People* v. *E. G. L. Co.*, 141 N. Y. 232 ; *People ex rel.* v. *James,* 5 App. Div. 412 ; *Taylor* v. *P., K. & Y. S. Ry. Co.*, 39 Atl. Rep. 560 ; *M. C. D. Co.* v. *State*, 43 Ind. 236 ; *State of Ohio* v. *Sherman*, 22 Ohio St. 411 ; *O. I. Co.* v. *Spradley*, 46 Ala. 107.) This case is not within chapter 301 of the Laws of 1892 or section 1925 of the Code of Civil Procedure. (*Adamson* v. *N. El. R. R. Co.*, 89 Hun, 268 ; *O'Connor* v. *Fitch*, 16 N. Y. L. J. 700.) The grant of "the exclusive right to lay a double track," given by the act of 1863, is valid. The act of 1892 confers no "exclusive privilege, immunity or franchise whatever." (*Matter of U. F. Co.*, 98 N. Y. 139 ; *Walla Wall City* v. *W. W. W. Co.*, 172 U. S. 1.) Neither the act of 1863 nor the act of 1892 is in conflict with the Constitution of New York. (N. Y. Const. of 1846, art. 3, § 16 ; *Montclair* v. *Ramsdell,* 107 U. S. 155 ; *Carter Co.* v. *Sinton*, 120 U. S. 523 ; *People ex rel.* v. *Briggs*, 50 N. Y. 553 ; Cooley on Const. Lim. [6th ed.] 171 ; *City of Rochester* v. *Briggs*, 50 N. Y. 558 ; *Phillips* v. *C. & C. B.*

*Co.*, 2 Metc. 219 ; *S. M. Ins. Co.* v. *Mayor, etc.*, 8 N. Y. 253 ; *People ex rel.* v. *Banks*, 67 N. Y. 568 ; *Johnson* v. *Harrison*, 47 Minn. 578 ; *People* v. *Wands*, 23 Mich. 384 ; *People ex rel.* v. *Whitlock*, 92 N. Y. 191.) It is not a valid objection to the consolidation that the constituent companies (other than the Harlem Bridge, Morrisania and Fordham Railway Company) had not built any part of their railroad. (L. 1892, ch. 340 ; L. 1863, ch. 361.) The issue of permits by Commissioner Haffen is sufficient evidence of his consent to the construction of the lines authorized by the common council in 1892, and described in such permits. (*Matter of R. El. Ry. Co.*, 123 N. Y. 351.) The alleged illegalities in the acquisition by the Union Railway Company of its extensions, are not the subject of just complaint. (*Abraham* v. *Meyers*, 29 Abb. [N. C.] 1389 ; Booth on St. Railways, § 63 ; *W., B. & T. Ry. Co.* v. *C. C. O. Co.*, 35 W. Va. 205 ; *Blanton* v. *R., F. & P. R. R. Co.*, 86 Va. 618 ; *A. & P. R. R. Co.* v. *St. Louis*, 66 Mo. 228 ; *Beekman* v. *T. A. R. R. Co.*, 153 N. Y. 144 ; *Fagan* v. *M. S. Ry. Co.*, 18 N. Y. L. J. Dec. 6, 1897 ; *S. B. R. R. Co.* v. *M. R. R. Co.*, 121 Mass. 485 ; *Sommers* v. *City of Cincinnati*, 8 Am. L. Rec. 612 ; *McAvoy* v. *P. & C. R. R. Co.*, 107 Penn. St. 546 ; *People* v. *O'Brien*, 111 N. Y. 64.)

*Charles A. Collin* and *William F. Sheehan* for the Union Railway Company, respondent. The original act of 1863 was constitutional and duly authorized the incorporation of the Harlem Bridge, Morrisania and Fordham Railway Company for the purpose of constructing, maintaining and operating a street surface railroad within the towns of West Farms and Morrisania, from the northern terminal of the Harlem bridge to the depot at Fordham. (*Matter of U. F. Co.*, 98 N. Y. 139 ; *Matter of G. El. Ry. Co.*, 70 N. Y. 361 ; *Matter of N. Y. El. R. R. Co.*, 70 N. Y. 327 ; *S. W. Co.* v. *City of Syracuse*, 116 N. Y. 167 ; *Trustees, etc.*, v. *Roome*, 93 N. Y. 313 ; *People ex rel.* v. *Briggs*, 50 N. Y. 553 ; *Matter of Van Antwerp*, 56 N. Y. 267 ; *Mayor, etc.*, v. *M. Ry. Co.*, 143 N.

Y. 23; *Rathbone* v. *Wirth*, 150 N. Y. 477.) The Harlem
Bridge, Morrisania and Fordham Railway Company, which
was lawfully incorporated under and in pursuance of the origi-
nal act of 1863 (Chap. 361), did not forfeit its corporate
existence or franchises by reason of not completing its road
within the time prescribed by the General Railroad Law of
1850 (Chap. 140), but continued to be a valid and lawful cor-
poration, with the franchises granted by said act and the acts
amendatory thereof, and by extensions under general laws,
until its consolidation with two other railroad companies into
the Union Railway Company of New York city, under
and in pursuance of the act of 1892 (Chap. 340). (*Mat-
ter of N. Y. El. R. R. Co.*, 70 N. Y. 338; *Comanche
Co.* v. *Lewis*, 133 U. S. 198; *Andes* v. *Ely*, 158 U.
S. 312; *Snell* v. *City of Chicago*, 133 Ill. 413.) The act of
1892 (Chap. 340) is constitutional, and the filing of the con-
solidation certificate, in pursuance thereof, effected the lawful
incorporation of the defendant. (*Sandham* v. *Nye*, 9 Misc.
Rep. 541; *Matter of N. Y. El. R. R. Co.*, 70 N. Y. 327;
*Matter of G. El. Ry. Co.*, 70 N. Y. 361; *People* v. *L. I. R.
R. Co.*, 9 Abb. [N. C.] 181; *Matter of B., etc., R. R. Co.*,
75 N. Y. 335; *Astor* v. *A. Ry. Co.*, 48 Hun, 570; 113 N.
Y. 113; *People ex rel.* v. *Whitlock*, 92 N. Y. 191; *People
ex rel.* v. *Briggs*, 50 N. Y. 553; *Wilcox* v. *Baker*, 22 App.
Div. 299; *Matter of N. Y. & L. I. B. Co.*, 148 N. Y. 541.)
All provisions of the act of 1892, and of general laws, relat-
ing to the incorporation of the respondent, the Union Rail-
way Company of New York city, to the extension of its
routes and to the consents of local authorities, were fully
complied with; and the proceedings under such statutory
provisions were valid and effectual to complete the right of
the Union Railway Company of New York city to construct,
maintain and operate its railroad upon the extensions in ques-
tion. (*Blanton* v. *R., F. & P. R. Co.*, 86 Va. 618; *P. R. R.
Co.'s Appeal*, 99 Penn. St. 162; *Mayor, etc.*, v. *Railroad Co.*,
48 Penn. St. 358; *Howard Co.* v. *Bank*, 108 U. S. 314; *Rail-
road Co.* v. *St. Louis*, 66 Mo. 255; *Volmer's Appeal*, 115 Penn.

St. 166; *Matter of T. F. S. R. R. Co.*, 102 N. Y. 343; *Matter of R. El. Ry. Co.*, 123 N. Y. 351; *Abraham* v. *Meyers*, 29 Abb. [N. C.] 384; *People* v. *B., F. & C. I. Ry. Co.*, 89 N. Y. 75.) The plaintiff cannot maintain this action as a taxpayer, by virtue of the Taxpayers' Acts, and he does not claim to be an abutting property owner. (*Gallagher* v. *Keating*, 40 App. Div. 81.) The validity of the incorporation of the defendant, the Union Railway Company of New York city, is not open to attack in this action. (*M. C. D. Co.* v. *State*, 43 Ind. 236; *People* v. *R. & S. R. R. Co.*, 15 Wend. 113.) The validity of the incorporation of the defendant cannot be attacked collaterally, but only in a direct proceeding by the state. (*People* v. *E. G. L. Co.*, 141 N. Y. 232; *People ex rel.* v. *James*, 5 App. Div. 412; *Taylor* v. *P., etc., Ry. Co.*, 39 Atl. Rep. 560; *McFarlan* v. *T. Ins. Co.*, 4 Den. 397; *Matter of Trustees Congregational Church*, 131 N. Y. 1.)

PARKER, Ch. J.    The Union Railway Company was formed July 5th, 1892, by consolidation of the Harlem Bridge, Morrisania and Fordham Railway Company (which for convenience we shall hereafter call the Harlem Bridge Company) with the Melrose and West Morrisania and the North Third Avenue and Fleetwood Park Railroad Companies, in pursuance of the authority attempted to be conferred by chapter 340 of the Laws of 1892, which amended chapter 361 of the Laws of 1863, entitled "An act to authorize the construction of a railway and tracks in the towns of West Farms and Morrisania," under which the Harlem Bridge Company was organized and its railroad constructed and operated. Immediately after such formation the Union Railway Company changed the motive power of so much of its property as was in actual operation, from horse power to electricity, and began the construction of the roads which the other companies had been incorporated to construct, but had never undertaken, and also the construction of extensions and branches, and so continued for a period of about five years, when this action was commenced. It is in form a taxpayer's action under chapter

301 of the Laws of 1890, and § 1925 of the Code of Civil
Procedure, as amended by chapter 524 of the Laws of 1892.
The prayer for relief, in effect, demands judgment that certain
resolutions of the common council, purporting to grant con-
sents to the defendant company to construct and operate a
street surface railroad on certain streets and avenues specified
therein, be declared null and void, and that they be canceled
of record.; that the commissioner of street improvements of
the twenty-third and twenty-fourth wards of the city of New
York be permanently enjoined from issuing any permit or
granting any other authority to the defendant railroad com-
pany to construct railroad tracks ; that the permits heretofore
given by such officer be declared null and void; that any
property or rights acquired thereunder be restored to the city of
New York, and that the defendant railroad company be per-
manently enjoined from proceeding or acting in any manner
under said alleged consents and resolutions.

While the appellant contends that the defendant company
did not obtain the consents required by sections 91 and 92 of
the Railroad Law before the right to construct a railroad upon
the routes mentioned in the various extensions could accrue,
in that not only the consent of the common council, but also
that of the commissioner of street improvements in the
twenty-third and twenty-fourth wards of the city of New
York was required, his principal contention is that the Union
Railway Company had no power to acquire franchises, and,
hence, that the consents given were without effect. It is
insisted that chapter 361 of the Laws of 1863 (which was
amended by chapter 340 of the Laws of 1892), in pursuance
of which this defendant company was created, is unconstitu-
tional, because it embraces more than one subject and confers
powers not expressed in the title, and that in any event the
act of consolidation did not operate as an amendment to the
original act, inasmuch as long before its passage the railroad
company formed thereunder had ceased to exist on account of
its failure to complete its road within the time prescribed by
section 47 of the General Railroad Law. The act of 1892 is

claimed to be void because it is a private or local bill, and embraces more than the one subject expressed in the title; it grants exclusive franchises, privileges or immunities; it grants the right to lay down railway tracks, and does not require the consent of property owners and local authorities as conditions precedent to construction.    It is further urged that the Union Railway Company has no power to construct railroads because the original company was not authorized to consolidate with what the appellant is pleased to term paper corporations, and, therefore, no consolidation has been effected.

The respondents say that all necessity for the consideration of these questions was obviated by the admissions in the complaint conceding corporate life in the Union Railway Company; that the statute purports on its face to confer corporate existence, and also to vest the corporation formed in pursuance of its provisions with certain powers, all of which may lawfully be done by the same statute; that if the statutory attempt to confer powers upon the corporation is of no effect, because the title and subject of the statute are not in agreement, and, hence, unconstitutional, it must follow that the attempt to create a corporation by the same statute also fails; in other words, if one attempt fails, both fail; if either attempt is effectual, both are, and, hence, the admission clearly made, that the corporation was created by the act of 1892, prevents the plaintiff from challenging its constitutionality. But we shall refrain from passing upon this question, and also from considering the further contention of the respondents, that the statutes do not confer upon a taxpayer the right to maintain actions of this character, and place our decision upon the broader ground that the enactments in question were within the legislative power.    Whether the legislation was wise is not for us to consider.    The motives actuating and the inducements held out to the legislature are not the subject of inquiry by the courts, which are bound to assume that the law-making body acted with a desire to promote the public good.    Its enactments must stand, provided always that they do not contravene the Constitution, and the test of constitu-

tionality is always one of power — nothing else. But in apply-
ing the test the courts must bear in mind that it is their duty
to give the force of law to an act of the legislature when-
ever it can be fairly so construed and applied as to avoid con-
flict with the Constitution.

The act of 1863 was passed before the prohibition against
the granting of exclusive privileges, immunities, franchises, or
a right to lay down railroad tracks became incorporated into
section eighteen of article three of the Constitution, and the
ground upon which it is now attacked is that the act embraces
a subject not expressed in the title. It is entitled " An act to
authorize the construction of a railway and tracks in the towns
of West Farms and Morrisania." The act contains nine sec-
tions, the last of which authorizes the corporation to be formed
under the act to lay railway tracks at the termination of its
road at Fordham to the village of West Farms, from thence to
the village of Westchester, and from thence to the village of
Mt. Vernon, in the towns of West and East Chester. So
while the title of the act authorizes railway construction in
the towns of West Farms and Morrisania only, section nine
permits construction in the towns of West and East Chester,
and as the subject of the legislation was the building of rail-
roads exclusively in the former towns, it follows that only
part of it was expressed in the title. When we read all the
provisions of the act the thought is suggested that section nine
was not a part of the original scheme, and probably not a part
of the first draft, for the eight sections preceding it relate to
the construction and operation of a railway and tracks in the
towns of West Farms and Morrisania. There is no hint in
them of construction in the towns of West and East Chester,
and section 9 opens with an authorization to " the corporation
formed under this act," to lay tracks from the termination of
its road at Fordham — a road which it was acquiring the right
to build by the prior provisions of the act. The first eight
sections provide a complete scheme for the building of
a railroad within the towns described in the title, and they
are not so interwoven with section 9 as to be incapable of

separation from it without affecting the whole scheme of
the act, and where an act of the legislature deals with a
subject not expressed in its title, and the unlawful pro-
visions are separable from those that are lawful, and what
remains is capable of being executed and stands complete in
itself, it is the duty of the court to disregard the unconstitu-
tional part of the statute and give force and effect to that
which is constitutional. (*Matter of N. Y. & L. I. Bridge
Co.*, 148 N. Y. 540.)

It is an interesting fact, although it in nowise affects the
question we have been considering, viz., the constitutionality
of the statute, that when the Harlem Bridge Company came
to file its articles of incorporation with the secretary of state
it refused to accept the benefit of the provisions of section 9;
later on, however, by an amendment of the articles of associa-
tion, it attempted to do so, yet neither it nor its successor, the
Union Railway Company, has ever attempted to lay railway
tracks over any portion of the route described in section 9.
It appears, therefore, that the Harlem Bridge Company was,
on the 16th day of May, 1863, validly incorporated for the
purpose of constructing, maintaining and operating a street
surface railroad from the northerly terminus of the Harlem
bridge to Fordham depot, which is the route specified in sec-
tion 1 of the act of 1863.

But the appellant says that even if the court shall so hold,
it nevertheless appears from the record that the Harlem
Bridge Company failed to comply with section 47 of the
Railroad Law, which provides that if any corporation shall
fail to complete its road within ten years "its corporate exist-
ence and powers shall cease."

Assuming, but not deciding, that the legal consequences of
the omission of that corporation to complete its road within
ten years would have worked out the result for which the
appellant contends, still the contention cannot be upheld
because of the absence of the facts necessary for its support.
Section 4 of the act of 1863 provides that the corporation
created thereunder shall build its road from Harlem bridge to

Eighth street, Morrisania, in six months, and from that point to the Fordham depot in twelve months from the passage of the act. The first eight sections, as we have already seen, did not authorize the building of any other road. The evidence is undisputed that the company not only constructed the road for the entire distance from Harlem bridge to Fordham within the period of twelve months authorized by the act, but that such road was completed and in operation within eight months from the passage of the act of 1863. The road that it did not build within ten years, and has never built, is that part of the road the building of which is attempted to be authorized by section 9 of the act, which we have already pronounced unconstitutional. Because that section contravened the organic law it was of no effect and neither authorized nor required the completing of the road described therein. For all purposes, therefore, section 9 of the statute must be treated as if it had never been written. Thus treating it, as we have seen, there is no foundation for the claim that the Harlem Bridge Company failed to complete its road within the time required by section 47 of the General Railroad Law, even though it be assumed that that section is applicable, notwithstanding the provisions of the special act fixing a different period of time within which the railroad was required to be completed.

The act of 1863 was several times amended prior to the act of 1892, which we must presently consider. The amendatory acts are chapter 715, Laws of 1865; chapter 815, Laws of 1866; chapter 892, Laws of 1867; chapter 658, Laws of 1871; chapter 717, Laws of 1873; chapter 553, Laws of 1874, and chapter 295, Laws of 1875. The conclusion which we have reached respecting the act of 1863 makes it unnecessary to consider what, if anything, would have been the effect of the several amendatory acts upon a corporation organized under the act of 1863, had the appellant's contention in respect to that act been sustained.

Before entering upon a consideration of the objections to chapter 340 of the Laws of 1892, it will be well to have in mind the general situation which this act was intended to

affect.    By virtue of the act of 1863 and the subsequent amendatory special statutes and proceedings under the general laws, the Harlem Bridge Company had constructed and was operating about ten miles of double track, street surface railroad, nearly nine miles of which it had operated for a period of over twenty-seven years.    There was also in existence the Melrose & West Morrisania Railroad Company, which was organized under the provisions of the General Railroad Law, having filed its articles of association in the office of the secretary of state on the 19th day of August, 1886, wherein was stated the route of its proposed railway.    On January 27th, 1890, the North Third Avenue and Fleetwood Park railroad came into being in pursuance of the provisions of the General Railroad Law, by filing with the secretary of state articles of association, wherein was described the route of its proposed railway.    Neither one of these corporations had entered upon the work of construction, nor had either obtained the necessary consents.    Chapter 340 of the Laws of 1892 is entitled " An act to amend chapter 361 of the Laws of 1863, entitled ' An act to authorize the construction of a railway and tracks in the towns of West Farms and Morrisania,' and all acts amendatory thereof."    It does not attempt to amend the first five sections of the act of 1863, but section 6 of that act, which provided for the issuing of bonds or obligations for the construction of the road, is amended so as to read in part as follows : " The corporation formed under this act may, from time to time, consolidate its capital stock and property with the capital stock and property of any street surface railway company incorporated, or to be hereafter incorporated, for the purpose of building or operating any street surface railroad,   *   *   *   the line of which is north or east of the Harlem river, in the city of New York, or the county of Westchester,   *   *   *   or may acquire by purchase or lease for years, or other term, the property and franchises of any such street surface railroad company, now or hereafter incorporated for the construction and operation of any such street surface railroad.   *   *   *   Such consolidation, purchase

or lease to be on such terms and conditions as the directors of
said corporations may agree upon." (Then follows the pro-
cedure by which the stockholders were to be given an oppor-
tunity to ratify or reject such consolidation.) "The name of
the corporation formed by such consolidation shall be the
Union Railway Company of New York City." (Here follows
the requirements of the agreement of consolidation, which
shall contain certain statements as to the amount of capital
stock, etc., after which the statute continues.) "The original
of such agreement of consolidation, and of said indenture of
conveyance of lease, or a copy thereof, certified to be correct
under the seals of said corporations, by the secretaries thereof,
shall be filed in the office of the secretary of state, and
from the time of such filing shall be taken and deemed to
be the agreement and act of consolidation, or indenture of
conveyance or lease, of the said companies, and binding and
valid in law, and a copy of the said agreement and act of
consolidation or indenture or lease, duly certified by the
secretary of state, under his official seal, shall be evidence
in all courts and places of the existence of said corporation,
and that the provisions of this act have been fully observed
and complied with." The rest of the section provides a
method for increasing the capital stock, if desirable and
for financing the company generally. Section 2 imposes
upon such consolidated company all obligations imposed
by law or contract upon any railroad company or persons so
consolidating with the Harlem Bridge Company. Section
three provides that sections 93, 95 and 98 of the General
Railroad Law shall not extend to the Union Railway Com-
pany ; section 93 requiring the sales of franchises to be by
public auction in cities of ninety thousand inhabitants; sec-
tion 95 requiring the payment of a certain percentage on
gross receipts to the municipality, and section 98 relating to
repairs of streets. In place of these provisions may be found
a requirement in section 3 that the company shall keep in per-
manent repair that portion of the street between the rails of
its tracks after the same shall have been paved or macadam-

ized, and section 4, which provides that the company shall pay one per cent on gross receipts whenever earnings shall during any period of six months exceed an average of seventeen hundred dollars per day, and that an additional annual payment of one per cent of such gross earnings shall be made by said company in like manner for each multiple of seventeen hundred dollars per day.

The first question relating to the constitutionality of the act is whether it violates section 16 of article 3 of the Constitution, which provides that " no private or local bills, which may be passed by the legislature, shall embrace more than one subject, and that shall be expressed in the title." The title reads as follows: " An act to amend chapter 361 of the Laws of 1863, entitled ' An act to authorize the construction of a railway and tracks in the towns of West Farms and Morrisania,' and all acts amendatory thereof." Section 1 expressly amends section 6 of the act of 1863, which authorized the Harlem Bridge Company to issue bonds. The new matter provides exclusively for the consolidation of the Harlem Bridge Company with any street surface railway company within a given territory. Section 2 treats of the same subject-matter, and the provisions of sections three and four have already been sufficiently adverted to. While the last three sections were not expressly declared to be amended sections of the act of 1863, they as effectively amended the act as if they had been incorporated into it as amended sections thereof. The act is local, for operation under it is confined to a small territory. Its title purports to effect a single object, namely, the amendment of a particular statute, and necessarily calls attention to the fact that the purpose is to add to, or deduct from, the authority granted by it. In that respect at least the usual method of amendatory legislation has been followed, and, because it authorizes something not permitted by the original act, it does not necessarily add to the number of subjects embraced in the legislation. The amendatory act of chapter 715, Laws of 1865, authorized the use of " dummy engines," and of course no

one would suggest that the legislation embraced a new subject that should have been expressed in the title in addition to those already therein expressed ; the title given was, " An act to amend an act entitled ' An act to authorize the construction of a railway and tracks in the towns of West Farms and Morrisania,' " and no one would suggest such a thing because, while the title refers to the construction only of a railway and tracks, the regulation of the operation of the completed railroad belongs to it and goes with it. Anything germane to the general subject of building and operating a railroad might have been included in the original act of 1863, provided always it was not prohibited by some constitutional provision. And that which might have been included in the original act without offending the constitutional provision under consideration, may be incorporated into it subsequently by amendment without a change of title. The original act as entitled might have provided not only for the construction of the Harlem Bridge railroad, but for its consolidation after completion with other street surface railroads, without offending against the provisions of section 16, for it would have related to the one general subject, namely, the building and operation of a railroad, either by itself or in conjunction with others under the plan authorized by the act. This amendment accomplishes no more than that, and, therefore, violates neither the letter nor the spirit of the Constitution.

The views of this court upon that subject found expression in *Matter of the Prospect Park & Coney Island R. R. Co.* (67 N. Y. 371). That was a special proceeding instituted by the Prospect Park & Coney Island Railroad Company to acquire a right of way by condemnation. Its right to do so was vigorously contested upon the ground, among others, that the act under which it based its claim of corporate life was violative of the provisions of section 16 of article 3 of the Constitution. It seems that the Prospect Park & Coney Island Railroad Company had been formed by the consolidation of two previously existing companies, to wit, the Park Avenue Railroad Company, with a route wholly within the city of

Brooklyn, and the Greenwood & Coney Island Railroad Company, with a route on Greenwood avenue in the towns of Gravesend and New Utrecht, wholly outside of the city of Brooklyn. A special act for the purpose of effecting a consolidation was passed, entitled " An act for the relief of the Park Avenue Railroad Company, in the city of Brooklyn, and to authorize the extension of its tracks through certain streets and avenues in the said city." While section 1 of the act authorized the Park Avenue Railroad Company to extend its tracks in certain streets specified in the city of Brooklyn, section 3 authorized it to consolidate "with any company or corporation now having the right to run and operate a railroad in and through any of the streets and avenues or highways in the county of Kings, * * * and such new company, when organized and a certificate filed in the office of the secretary of state, shall have the right to lay and construct such parts of the road as are not already constructed, and to maintain and operate the whole road upon the route or routes of each of said companies so consolidating." The court reached the conclusion that the consolidation was valid and in the course of its opinion said : " The title of the act of 1874 does express the subject of the act sufficiently for all the purposes of the Constitution. The act does not treat of more than one subject; all that is in it might have well been in an act incorporating this company. It would have been the details of the one general subject. An act for the relief of a railroad company must be one to remove some restriction upon its powers or to give it greater powers. An act entitled, for the relief of such a corporation expresses such subject."

We shall next inquire whether the act violates that provision of section 18, article 3 of the Constitution, which provides : " The legislature shall not pass a private or local bill * * * granting to any corporation, association or individual the right to lay down railroad tracks."

The act certainly does not in terms provide that the company to be created by the consolidation shall have authority to lay down railroad tracks, nor does it purport to grant any

such right. But it is said that the Union Railway Company has, as matter of fact, laid down railroad tracks, and, if they were lawfully laid, where did it get the authority if not from the statute? The answer is very simple and it is this : True, the Union Railway Company has put down many miles of track since it came into existence, not, however, by virtue of any grant to it by the act of 1892, but solely because it has succeeded to the rights which the consolidating companies had to lay down tracks. An illustration will, perhaps, serve to make the absolute verity of the answer appear more readily. Assume that the Harlem Bridge Company had been authorized to build only from the Harlem river to Eighth street, Morrisania, and had done so ; that the Melrose Company had been incorporated to build from the terminus of the former at Eighth street to Fordham, had acquired the necessary consents, prepared for building the road and would have soon completed it but for the passage of the act of 1892, the outcome of which was consolidation under the corporate name of the Union Railway Company, and that then the latter laid down the tracks. No one in that case would hesitate for a moment to say that the Union Railway Company derived its authority to lay down tracks from the Melrose Company. The authority to build such railroad was vested in the latter company, and in it alone, through the machinery provided by the legislature, which could not thereafter take the right away and give it to another corporation. The draughtsman of the act of 1892 appreciated the situation, and, hence, there is not a syllable in the act, from beginning to end, that suggests an intent to grant to the consolidating corporations the powers which of right belonged to and were vested in the corporations that were to be the subject of consolidation. The act provided for a consolidation of the capital stock and property of any street surface railroad within the territory described in the act, and the effect of a consolidation was to enable the new corporation to succeed to all of the rights and privileges of the consolidating companies, whatever their nature and character, including such rights as they had, or, under the

General Railroad Law of this state, might be permitted to acquire in the nature of extensions of, or branches from, the road already built or those which were at the time simply located.

We have thus briefly called attention to the distinction that the courts have been frequently called upon to make between the grant of a right and the regulation of rights previously granted. In *Matter of the N. Y. El. R. R. Co.* (70 N. Y. 327) this court had under consideration a special act known as chapter 595 of the Laws of 1875. It was contended that the act violated the constitutional provision we are considering, in that it conferred authority to lay down railroad tracks and granted exclusive privileges; it was held, however, that the act did not confer any new franchises, but only confirmed and regulated those previously possessed by another company, and that it did not authorize the laying down of railroad tracks, but simply confirmed the authority previously granted to the company to which the elevated railroad company had succeeded; and the court, through Judge EARL, said : " These constitutional provisions do not prohibit a private or local bill to amend the charter of a private corporation by regulating the powers, rights, privileges and franchises which it previously possessed. Such a bill may not be passed to give to an existing corporation any new right to lay down railroad tracks, or any new exclusive privileges or franchises; but it may be passed to regulate and control the right to lay down tracks previously existing, or to give new privileges or franchises, provided they be not exclusive." The decision of this court in *Matter of Gilbert El. Ry. Co.* (70 N. Y. 361) is also in point.

While the act of 1892 does grant an exceptional privilege it does not grant " an exclusive privilege, immunity or franchise " within the meaning of the Constitution. (*Matter of Union Ferry Co.*, 98 N. Y. 139.)

The contention that the act is void because it does not require the consents of the abutting owners and of the local authorities is met by the argument made while considering

the question whether the act of 1892 operated as a grant of the right to lay down railroad tracks. The act does not attempt to do away with the necessity for the consents which the Constitution and the statutes require. It does not attempt to provide the procedure for the building of a railroad, but for the consolidation of the Harlem Bridge Company with other companies, two of which were in existence and were organized under the General Railroad Law ana made subject to its provisions, as was the Harlem Bridge Company. To such rights as those corporations had, the act, in effect, provides that the consolidated corporation shall succeed, and it expressly provides, among other things, that the latter corporation, when created, shall succeed, not only to the rights of the existing corporations, but also to their burdens, obligations and liabilities imposed by law. Those corporations could not, prior to the passage of the act of consolidation, build the roads located by them, or extensions or branches thereof, as authorized by the General Railroad Law, without obtaining the consent of the municipal authorities and of the abutting owners in the manner and to the extent required by the statute. The act of 1892 simply places the consolidated corporation in the shoes of the then existing corporations, with the exceptions expressly provided by sections 3 and 4 of the act, which, as we have already seen, relieve the consolidated corporation from the necessity of complying with sections 93, 95 and 98 of the General Railroad Law, and substitute other requirements in their stead.

But it is said : If it be true that the General Railroad Law is applicable to the consolidated corporation, then the construction of new lines was without authority because no consent was granted by the local authority of the annexed district. It is conceded that the requisite consents of the abutting owners were obtained, and the common council of the city of New York, by appropriate resolution, duly gave consent to such construction. The appellant, however, insists that the legislation relating to the powers and duties of the commissioner of street improvements of the twenty-third and twenty-

fourth wards of the city of New York, conferred upon that
officer exclusive control of the streets and avenues within
those wards, and, hence, that his consent was necessary. As
that officer interpreted the statute, the consent of the munici-
pal authorities, by which the franchise to construct and
operate a railroad in a given street is obtained, was completed
by the consent of the common council given in conformity
with law, but before the company could enter upon the work
of constructing its railroad in such street, it was necessary for
it to obtain his permit. In conformity with his understanding
of the law he did, from time to time, grant permits for such
construction, so that, as matter of fact, the Union Railway
Company has not only acquired the consent of the municipal
authorities for all of the construction entered upon by it, but
has had, in addition, the permit of the commissioner of street
improvements. If a permit only were required, then the pro-
ceedings were in all respects regular. If, on the other hand,
the commissioner was the local authority for that district,
whose consent was made necessary in order to create a fran-
chise under the provisions of the General Railroad Law, then
that consent was not obtained, for the statutory notice of the
application was not given.

The Appellate Division reached the conclusion, with which
we are in agreement, that the statutes did not confer upon the
commissioner of street improvements such exclusive control of
the streets in such wards as, under section 91 of the General
Railroad Law, required the consent of such commissioner in
addition to the consent of the common council for the con-
struction of street railroads in such streets; and as we are
content with the reasoning of the learned presiding justice,
we shall omit a discussion of the question.

It is further urged that the Union Railway Company has
no power to construct railroads, because the original company
was not authorized to consolidate with paper corporations, and,
therefore, no consolidation has been effected. A legislative
grant of a right to consolidate is not forbidden by the Consti-
tution. (*Matter of Prospect Park & Coney Island R. R.*

Co., supra.) The only question, therefore, is whether this act was broad enough to authorize the consolidation made, for there is no room to doubt that the legislature had power to authorize such consolidation. The fact is, as has already been observed, that the Melrose Company and the West Morrisania and the North Third Avenue and Fleetwood Railroad companies had not obtained the necessary consents to the building of the roads located by them, and of course had not entered upon the work of construction; but they were duly incorporated under the General Railroad Law and had located their routes. Each company possessed capital stock, divided into shares of fifty dollars each, of which three hundred and fifty had been subscribed at the time of the incorporation. Necessarily these subscriptions had been partly paid, otherwise the companies could not have been legally incorporated. The subscriptions unpaid constituted an indebtedness to the company and were assets and property of the company. Each was incorporated for the purpose of building a railroad within the specified territory. Each company, therefore, had capital stock and property with which the capital stock and property of another surface railroad corporation could be consolidated with the permission of the legislature. Turning to the act of 1892, we find that section 6 of the act of 1863 is so amended as to provide that the corporation formed under this act may, from time to time, " consolidate its capital stock and property with the capital stock and property of any street surface railroad company incorporated or to be hereafter incorporated for the purpose of building or operating any street surface railroad. * * *" Thus it appears that the terms of the act were sufficiently comprehensive to authorize the consolidation actually made. Some of the steps taken by the consolidated corporation have been challenged, but we do not think the questions raised merit discussion.

Our conclusion is that the enactments to which the Union Railway Company owes its existence and under which it has acquired the property and rights now in its possession were within the legislative power, and, therefore, may not be inter-

fered with by the courts whatever may be their view of the propriety of the legislation, and that the proceedings resulting in, and those taken subsequent to, consolidation were substantially in conformity to the statutes applicable thereto and valid.

The judgment should be affirmed, with costs.

All concur, except BARTLETT, J., dissenting, and MARTIN, J., absent.

Judgment affirmed.