Robert C. Williams, J.
Plaintiffs move for an order of summary judgment declaring the provisions of section 153-c of the Public Authorities Law to be unconstitutional and void and for an order enjoining the enforcement of said statute.
Plaintiffs consist of the individual members of the Board of the Jones Beach State Parkway Authority (hereinafter referred to as the Authority) and the Chase Manhattan Bank, as trustee for the bondholders of the bonds of the Authority.
The Authority was created under the legislative enactment of title 3 of article 2 of the Public Authorities Law. Under subdivision 2 of section 153-b of said law the Authority is empowered to reconstruct, operate, and maintain the Southern State Parkway (as well as other parkways).
Subdivision 5 of section 153-b of said statute reads as follows: "5. To charge tolls for the use of the part of Southern state parkway improved by the authority subject to and in accordance with any agreements with bondholders made as hereinafter provided. The toll shall be ten cents unless the revenues from such tolls and the income from the facilities *374 authorized by the foregoing provisions of this section are insufficient to meet all obligations of such agreements and to pay the costs of operating and maintaining the parkways and facilities operated and maintained by the authority pursuant to the foregoing provisions of this section. The revenue from such tolls and the income from such facilities shall be used only to meet such obligations and to pay the cost of constructing, reconstructing, operating and maintaining such parkways and facilities”.
Subdivision 1 of section 158-a of the Public Authorities Law reads as follows: "§ 158-a. Covenants of the state 1. The state of New York does pledge to and agree with the holders of any bonds issued pursuant to this act after January first, nineteen hundred thirty-nine that it will not limit or alter the rights hereby vested in the authority to construct, reconstruct, operate and maintain the parkway, bridges and other improvements, or any of them, and to collect revenues therefrom as authorized in this title insofar as such rights may be necessary in order that the authority may fulfill the terms of any agreements made with the holders of such bonds and that it will not in any way impair the rights and remedies of the holders of such bonds until the bonds, together with interest thereon, with interest on any unpaid installments of principal and interest and all costs and expenses in connection with any suits, actions or proceedings by or on behalf of the bondholders are fully met and discharged.”
The Authority authorized and received a study entitled "Report on Study of Traffic, Tolls, Revenues and Expenses for Southern State Parkway”, dated October 31, 1974, prepared by URS/Madigan-Praeger, Inc., an independent engineering consulting firm with acknowledged expertise in the field.
The Authority, on the basis of this study and other estimates and projections, determined that the toll had to be increased from 10 cents to 25 cents to provide sufficient additional revenue to meet its obligations under subdivision 5 of section 153-b. In brief summary, said afore-mentioned study concluded the 25-cent toll was needed if the Authority wished to undertake and complete a long range capital improvement program which consisted in part of widening the parkway in certain sections and making major structural and safety improvements. The report also found that an increase of 5 cents, thus making the toll 15 cents, would be sufficient to meet all *375 operating and maintenance costs, including debt service, until 1981.
On December 13, 1974, the Authority adopted a resolution raising the toll to 25 cents effective January 1, 1975. Said resolution was upheld as not being ultra vires in Russell v Jones Beach State Parkway Auth. (80 Misc 2d 698). Mention is made of said decision for two reasons. Firstly, this court agrees with the court in Russell that the Authority had the power to adopt said toll increase because the Authority was clothed "with the power and authority to exercise judgment and discretion not only as to carrying out the physical improvement program, but also as to all details of the toll charge provided for financing the very extensive improvement program, including the time for putting the charge into effect.” Secondly, and more pertinently, the issue of whether this toll raising act was ultra vires is not relevant to the case at bar. The case at bar is concerned solely with the unconstitutionality of section 153-c of the Public Authorities Law, and despite defendants’ attempts to inject the ultra vires issue into this case, its proper venue remains in an article 78 proceeding.
On February 21, 1975, the office of the State Comptroller issued a report entitled "Special Report on the Jones Beach State Parkway Authority Relative to its Toll Structure on the Southern State Parkway.” Said Comptroller’s report concurred with the afore-mentioned URS/Madigan study that only a 5-cent increase would be sufficient to cover revenue needs for debt service, operation and maintenance until 1981. Said Comptroller’s report concluded that any major capital improvement program should be deferred until such time as new studies are made taking into consideration the effects on traffic flow of the energy crisis plus numerous other contingencies affecting the Long Island transportation picture.
On March 11, 1975, Governor Hugh Carey signed into law section 153-c of the Public Authorities Law. Said section 153-c rolled back the toll on the Southern State Parkway to 10 cents. The other provisions of section 153-c established procedures to be followed by the Authority prior to any future toll increase. Basically these procedures are: 1. The submission to the Comptroller of a detailed report explaining the need for such proposed increase. Said report is to be submitted not less than 120 days prior to the effective date of such proposed increase. 2. The Comptroller is to make public his recommendations concerning the proposed increase within 60 days. 3. *376 The Authority shall hold a public hearing upon such proposed toll increase not less than 15 days prior to the effective date of such increase. After said public hearing the Authority shall reconsider the proposed increase and then may take such action on a toll increase as it then deems necessary and advisable. Plaintiffs now move for summary judgment declaring section 153-c unconstitutional.
Before moving to the merits of the main controversy the court will pass on some minor collateral issues which have been raised by the pleadings herein.
Governor Hugh Carey and Comptroller Arthur Levitt are not proper party defendants herein and the complaint as to them is hereby dismissed. (Glen v Rockefeller, 61 Misc 2d 942, 943, affd 34 AD2d 930.)
The individual plaintiffs as members of the Authority have the requisite standing to obtain a declaratory judgment concerning the constitutionality of section 153-c. (Board of Educ. v Allen, 20 NY2d 109, affd 392 US 236.) There can be no doubt that plaintiffs have a "personal stake in the outcome” of this litigation. (Baker v Carr, 369 US 186.)
The court notes that it has granted leave to the Automobile Club of New York, Inc., to intervene as amicus curiae in support of the constitutionality of section 153-c. Leave to intervene as amicus curiae has also been granted to the New York State Thruway Authority whose position supports the unconstitutionality of said statute. Said intervention of both amicus curiae was on consent of all parties herein.
The court now turns to the merits.
Plaintiffs contend section 153-c violates the provisions of article I (§ 10, cl 1) of the United States Constitution that "No State shall * * * pass any * * * Law impairing the Obligation of Contracts”. It is plaintiffs’ position that the State’s pledge to the bondholders contained in subdivision 1 of section 158-a constitutes a contract between the State and the bondholders that the State of New York "will not limit or alter the rights hereby vested in the authority to construct * * * and to collect revenues therefrom * * * in order that the authority may fulfill the terms of any agreements made with the holders of such bonds and that it will not in any way impair the rights and remedies of the holders of such bonds”. Thus, plaintiffs contend the section 153-c is an unconstitutional impairment of the State’s contract obligation with the bondholders in that its toll rollback and 120-day waiting period *377 provisions limit the Authority’s right to collect revenues and that the provisions requiring the submission of a report to the State Comptroller and the subsequent public hearing have the effect of limiting or altering the Authority’s autonomous rights to operate, maintain and collect revenue from the Southern State Parkway.
Defendants concede that the State pledge contained in subdivision 1 of section 158-a constitutes a contract with the bondholders. However, defendants’ position is that section 153-c does not impair the State’s obligation under said contract or alternatively that any such impairment is merely technical and not a material impairment. In any event, defendants argue that section 153-c is a valid exercise of the State’s police power and as such takes precedence over any existing contract, because no contract may be permitted to stand in the way of the power of the State to promote the welfare of the citizens. (East N. Y. Bank v Hahn, 326 US 230.)
The leading case on the relationship of the Contracts Clause and the police power is Home Bldg. & Loan Assn. v Blaisdell (290 US 398). In Blaisdell, Minnesota mortgage moratorium legislation designed to afford homeowners added time to meet their mortgage obligations was held not to be violative of the Contracts Clause. The reasoning behind said decision was that although the State was impairing the contract obligation between the mortagor and mortgagee, said legislation was a reasonable exercise of the reserved power of the State to protect the vital interests of the community during the economic emergency created by the great depression. The legislation was addressed to a legitimate end, it was not for the advantage of particular individuals, but for the protection of a basic interest of society. (Blaisdell, supra, p 445.)
A recent case of considerable import is El Paso v Simmons (379 US 497). Said case dealt with Texas legislation which limited certain previously granted property reinstatement rights. Said legislation was held to constitute a valid exercise of the State’s power to modify or affect the obligation of its contracts. The essential question (pp 506-507) was not whether the statute impaired the "obligation” or the "remedy” for "not every modification of a contractual promise [or] every alteration of existing remedies violates the Contract Clause.” The test was whether the modification of the contractual obligation was reasonable on the facts involved. Quoting Blaisdell (p 508) the court said, "The decisions put it beyond *378 question that the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula”. El Paso also promulgated a test for whether a contract obligation was actually being impaired. "The promise of reinstatement, whether deemed remedial or substantive, was not the central undertaking of the seller nor the primary consideration for the buyer’s undertaking” (p 514). Thus, the court held that unless the State’s pledge was the primary consideration for the purchaser’s undertaking, then the revocation of such pledge would not be an unconstitutional impairment of the obligation of contract in light of the legitimate exercise of State police power.
United States Trust Co. of N.Y. v State of New Jersey (Sup Ct of NJ, decided May 14, 1975) has borrowed heavily from the Supreme Court’s dictates in El Paso. United States Trust dealt with an alleged contract obligation impairment by the State of New Jersey with the bondholders of the Port of New York Authority. Said case involved the 1974 repeal of a 1962 covenant which covenant restricted the Port Authority’s power to acquire or operate passenger rail transit lines. This covenant in effect was a pledge by the State to the existing and future bondholders that the Port Authority would not impair the security for the outstanding bonds by acquiring insolvent or deficit producing mass transit lines. The court in United States Trust held that although the 1974 repeal of said 1962 covenant did constitute some degree of impairment of the contract obligation, bondholder security had not been materially impaired or destroyed by the repeal. The 1962 covenant had not been the "primary consideration” for the bondholder’s undertaking. The court cited numerous other safeguards and provisions which exist insuring the fiscal integrity of the Port Authority’s bonds.
More importantly, the court held that said 1974 repeal legislation was a valid reasonable exercise of the State’s police power designed to meet the urgent, pressing need for development of a viable mass transit system in the metropolitan New York-New Jersey area in light of the current energy crisis, pollution and traffic problems. The court in United States Trust held (p 95), "The thrust of the plaintiff’s argument is that any impairment of the security provisions of a contract violates the Contract Clause. It seeks to recreate a theory of the Contract Clause which, if ever imbedded in our constitutional law, no longer exists. It is the judgment of this Court *379 that the repeal legislation was a reasonable and hence valid exercise of the state’s police power which is not prohibited by the Contract Clause of either the Federal or the State Constitution”.
In light of the foregoing discussion of the applicable law, this court must first determine if section 153-c is an impairment of the State’s pledge or obligation to the bondholders contained in section 158-a. Secondly, if such an impairment exists, is it justified on the facts herein as a reasonable exercise of the State’s reserved police power?
Section 153-c contains two major substantive provisions; one mandating the rollback of the toll to 10 cents and the other sections setting forth a detailed plan requiring the Authority to submit the required detailed report to the Comptroller 120 days before any future toll increase, the subsequent publication of the Comptroller’s recommendations and the holding of a public hearing on said proposed toll increase. It is the opinion of this court that the 10-cent rollback provision is an unwarranted impairment of the State’s pledge to the bondholders not to "limit or alter the rights hereby vested in the authority * * * to collect revenues * * * in order that the authority may fulfill the terms of any agreements made with the holders of such bonds” (§ 158-a, subd 1). In reviewing the history of the creation of public authorities in New York, this court finds that said pledge by the State to the bondholders was indeed a "primary consideration” for the bondholders’ purchase of said bonds. (El Paso v Simmons, 379 US 497, 514, supra.) The bondholders had the right to rely on the State’s noninterference with the power of the Authority to set tolls according to the Authority’s determination of its own needs and obligations. It is not contested by the defendant that a rollback of the toll increase for a 120-day period will cause an actual loss of revenue to the Authority of $1,600,000 to $1,900,000. Though the record indicates that this loss of revenue will not endanger the security of said bonds and will not precipatate any actual default, said loss of revenue does constitute a technical impairment of the Authority’s obligation and power to set tolls according to its own determination. Said impairment may not be justified unless said legislation is a reasonable exercise of the State’s police power. (Home Bldg. & Loan Assn. v Blaisdell, 290 US 398, supra.) Defendants contend that said rollback legislation is reasonably related to the alleviation of the severe traffic congestion on the local *380 streets caused by motorists attempting to avoid the 25-cent toll. Defendants point out the attendant threat to public welfare and safety this "horrendous” traffic situation has created.
The court cannot accept defendants’ contention that the rollback provision of section 153-c is a reasonable exercise of the State’s police power designed to cure the traffic congestion on the local streets. No allusion to any such traffic emergency is contained in the language of section 153-c. More importantly, section 153-c has the effect of merely postponing the inevitable toll increase for a period of 120 days, at which time the local streets would undoubtedly again be jammed by motorists seeking to avoid the toll increase. The court cannot conclude that this legislation was fostered by a legislative intent to alleviate the traffic situation. Even conceding that such an intent did exist, the provisions of section 153-c are not reasonably related to that end.
Thus the rollback provision of section 153-c cannot be upheld in the face of the Contracts Clause. The situation at bar is distinguishable from United States Trust (supra) in that while there may be a technical, impairment of the bondholders’ contract, there is no vital interest of the State which said legislation is designed to remedy. In United States Trust the urgent need for an effective mass transit system, amplified by the emergent energy and pollution crises, in an area affecting approximately 16,000,000 people was a legitimate State interest which overcame the impairment of the bondholders’ contracts. However, it appears that the toll rollback provision in section 153-c was intended either to provide toll relief to the users of the Southern State Parkway or, more probably, to communicate to the Authority that the Legislature was of the opinion that the toll increase to 25 cents was an ultra vires act. Neither motivation is sufficient reason to overcome the impairment of the contract rights.
Turning to other provisions of section 153-c, those relating to the 120-day waiting period during which reports are filed and a public hearing held, the court can find no justification for plaintiffs’ position that said procedures impair the contract obligation to the bondholders. The controlling factor herein is that the ultimate and final authority to set the toll rate still remains in the hands of the Authority. The submission of a report to the Comptroller detailing the various factors behind the need for a rate increase does not "limit or alter” any *381 rights of the bondholders. The Authority itself commissioned such a report for its own consideration in determining the proper toll increase. It is fair to assume that any future toll increases would have to be justified by the commissioning of such a comprehensive study. Certainly there is no prejudice to any bondholder’s right by the forwarding of such a report to the Comptroller for his recommendations, which recommendations, it is to be emphasized, do not bind the Authority under the provisions of section 153-c. For the above-mentioned reasons, the conducting of a public hearing at least 15 days before the effective date of any proposed toll increase, does not limit or alter the Authority’s sole power to determine toll rates.
Plaintiffs contend that the 120-day hiatus before a proposed toll increase may be implemented constitutes a material impairment of the contract obligation. While this argument may present a theoretical impairment, it is not a viable contention when viewed realistically. At the end of the 120-day period for completing the required procedures under section 153-c the Authority still retains the power to raise the toll to whatever level is required. Any potential loss of revenues which might have been incurred due to the 120-day waiting period can be offset by the toll level finally determined. Furthermore, the report on the necessity for such toll increase would undoubtedly take into consideration the effect of this 120-day waiting period. This court cannot envision these provisions in any way impairing the financial security of the bondholders. The Constitution is intended to preserve practical and substantial rights, not to maintain theories. (El Paso v Simmons, 379 US 497, 515, supra.)
Even assuming that the full disclosure provisions of section 153-c are a theoretical or technical impairment, said technical impairment is overcome by the police power argument. The full financial disclosure provisions, unlike the toll rollback provision, are a reasonable exercise of the State’s reserved police power to safeguard the vital interests of the community. (Home Bldg. & Loan Assn. v Blaisdell, 290 US 398, 441, supra.)
It is the stated public policy of New York State to serve the public interest by requiring the Comptroller’s report to be made public and to give the public the right to be heard at a public hearing concerning any proposed toll increase. "It is incumbent on the state and its localities to extend public *382 accountability wherever and whenever feasible. The people’s right to know the process of government decision-making and the documents and statistics leading to determinations is basic to our society.” (Public Officers Law, § 85 [Freedom of Information Law].) The court takes note that though the Legislature has declared the public’s right to be informed on the determinations of government a basic, vital interest, this interest does not rival the economic emergency conditions cited in Blaisdell or El Paso or the transportation crises existent in United States Trust. However, an emergency situation is not a prerequisite to the invocation of the State’s police power, especially, as in the instant case, when the subject legislation does not materially impair the obligation of contract. The test for legality of a legislative act under the police power is always the public good. (Matter of Rudack v Valentine, 163 Misc 326, affd 274 NY 615.) These provisions of section 153-c are reasonably related to serving the public interest and as such are not violative of the Contract Clause.
Thus, it appears that subdivision 1 of section 153-c, rolling back the toll to 10 cents, is constitutionally void while the other provisions of said statute are not violative of the Contract Clause. It is a fundamental rule that a statute may be constitutional in one part and unconstitutional in the other part, and that if the invalid part is severable from the rest, the portion which is unconstitutional is struck out and rejected. (Schieffelin v Goldsmith, 253 NY 243.) If a statute attempts to accomplish two or more objects, and is void as to one, it may still be complete and valid as to the others., (Matter of Village of Middletown, 82 NY 196.) Section 153-c attempts to accomplish two objects; firstly the rollback of the toll to 10 cents, and secondly the establishment of public disclosure procedures for any future toll increases. Each part or object could exist separately without the other. The toll could have merely been rolled back or alternatively the full disclosure procedure could have been established. It is clear that there is no mutual interdependence of the two subject matters. If the unlawful provisions are separable from those that are lawful, and what remains is capable of being executed and stands complete in itself, the court should disregard the unconstitutional part of the statute and give effect to that which is constitutional. (Bohmer v Haffen, 161 NY 390.)
Accordingly, plaintiffs’ motion is hereby granted only to the extent that subdivision 1 of section 153-c of the Public Author *383 ities Law restoring the toll herein to 10 cents is hereby declared to be unconstitutional and void and the defendants are hereby enjoined from enforcing said section. All other sections, paragraphs and provisions of section 153-c are hereby declared to be constitutional and are to remain in full force with subdivision 1 stricken therefrom. The preliminary injunction granted herein by Honorable George L. Cobb restraining the defendants from enforcing section 153-c of the Public Authorities Law is hereby vacated.