Sidney A. Fine, J.
Petitioners, public office holders, citizens and taxpayers seek a judgment declaring chapter 603 of the Laws of 1973 (Act), unconstitutional. Preliminarily, they move for a temporary injunction to restrain respondent, the Governor of the State of New York, from appointing Judges of the Court of Claims pursuant to the Act.
Respondent cross-moves for a judgment dismissing the petition on a variety of grounds — that the court has no subject matter jurisdiction; petitioners do not have the legal capacity to sue, and lack standing; the legal insufficiency of the petition and lack of personal jurisdiction over the respondent Governor. It is supported by only a notice of motion and memoranda. On the jurisdictional issue no affidavit has been submitted alleging facts showing nonjurisdiction.
*876 The Act establishes “ an emergency dangerous drug control program ”, the objective of which is the effective implementation of the legislative acts respecting dangerous drugs. It provides for the inclusion of ‘ ‘ the efficient application of existing judicial resources, including the use of improved court management and case processing techniques and the temporary assignment of existing judges ”, including up to 100 additional Judges and funds for the establishment of up to 100 criminal court parts and other judicial facilities; and for expansion of facilities and services of various agencies. Further, it directs that
“ The state administrator of the courts and the commissioner of the division of criminal justice services shall jointly prepare a plan fcjr the efficient application of existing judicial resources and such additional judicial resources made available in accordance with this act and with a demonstrated need therefor.
“ No monies appropriated by this act for court parts, facilities and ancillary court services shall be apportioned by the director of tlie budget until such plan is prepared by the .state administrator of the courts and the commissioner of the division of criminal justice services and adopted by the administrative board of the judicial conference. . Such plan upon adoption by the administrative board of the judicial conference shall be implemented jointly by the state administrator of the courts and the commissioner of the division of criminal justice services.” (Emphasis added.)
The Act also authorizes the appointment by the Governor, prior to July 1, 1974, with the advice and consent of the Senate, of a maximum of 68 additional Judges to the Court of Claims, each for a nine-year term not subject to succession either upon expiration of their terms or upon vacancy from any cause.
The Act also calls for the creation of 39 additional Judges in various courts within the State.
Another subdivision of the Act revamps prior provisions respecting probation resources in New York City. It creates a Department of Probation in the City of New York, replacing four prior probation offices, to have charge of all probation work in the Supreme, Family and Criminal Courts in all boroughs, headed by a director of probation appointed by and serving at the pleasure of the Mayor of the City of New York. It provides for the transfer of the existing probation offices to the newly created probation department with continuance of the pre-existing probation activity and services.
The Act provides further for the carrying out of its various provisions at stated time intervals. Thus, sections 1 to 5 dealing *877 with appropriations became effective immediately upon approval June 11, 1973; sections 6 to 12 affecting courts and Judges became effective July 1, 1973; sections 13 to 17, involving regional criminal justice and data compilation, and sections 18 to 20, covering the Probation Department, take effect on September 1, 1973 and February 1, 1974, respectively.
Petitioners, pointing to section 1 of the Act, contend it extends powers affecting the judicial system to the Commissioner of the Division of Criminal Justice Services. He is an appointee of the Governor (Executive Law, § 822, subd. 2, renumbered § 836, subd. 2 by § 13 of the Act). The Act empowers him to share with the State Administrator the administration of the emergency dangerous drug control program. Petitioners argue that it clashes with section 28 of article VI of the State Constitution which reads: ‘ ‘ The authority and responsibility for the administrative supervision of the unified court system for the state shall be vested in the administrative board of the judicial conference. The administrative board shall consist of the chief judge of the court of appeals, as chairman, and the presiding justices of the appellate divisions of the four judicial departments. The administrative board, in consultation with the judicial conference, shall establish standards and administrative policies for general application throughout the state. The composition and functions of the judicial conference shall be as now or hereafter provided by law. In accordance with the standards and administrative policies established by the administrative board, the appellate divisions shall supervise the administration and operation of the courts in their respective department.”
That part of the Act providing in section 1 for joint action by the State Administrator and the Commissioner of the Division of Criminal Justice Services appears to go beyond the mere formation of a plan and budget for the “ efficient application of existing judicial resources and such additional judicial resources made available ”,
Under this section of the Act, the Administrative Board is not vested with sole administrative supervision of the judiciary system pertaining to the program, because it states that 4 ‘ such plan upon adoption" by the administrative board of the judicial conference shall be implemented jointly by the state administrator of the courts and the commissioner of the division of criminal justice services.” (Emphasis added.) By this language the executive branch of government will be exercising wide power without limitation in administering the court system *878 which will invoke the implementation of the Emergency Drug Control Program. It is in direct conflict with section 28 of article VI of the State Constitution which gives sole administrative control of the unified court system to the Administrative Board of the Judicial Conference. Its effect would give the executive branch of government veto power over all administrative functions and responsibilities of that part of the judicial system which will deal with the implementation of the “ emergency dangerous drug control program ”. It violates the historic doctrine of separation of powers.
The doctrine of the separation of powers of the executive, legislative and judicial branches of government is fundamental in the American theory of constitutional government. One branch is not to encroach upon the other, except insofar as authorized by the Constitution. Essential functions of the judiciary branch are not to be usurped by the executive nor legislative. Similarly, the judiciary is not to interfere with the two other co-ordinate departments of government except when the intermingling of spheres of action is authorized or contemplated by the Constitution itself. In this scheme of government a dangerous concentration of power is avoided, and respective powers are assigned to the department best fitted to exercise them. An encroachment by the executive branch on the judiciary, no matter how .small, must be resisted less the fabric of government providing for separate departments of government be changed to unequal status. Therefore, petitioners maintain that by any standard this part of the Act is unconstitutional.
Next, petitioners charge that the section empowering the Governor to appoint up to 68 Court of Claims Judges, likewise is unconstitutional.
Section 9 of article VI of the State Constitution reads: “ The court of claims is continued. It shall consist of the eight judges now authorized by law, but the legislature may increase such number and may reduce such number to six or seven. The judges shall be appointed by the governor by and with the advice and consent of the senate and their terms of office shall be nine years. The court shall'have jurisdiction to hear and determine claims against the state or by the state against the claimant or between conflicting claimants as the legislature may provide.”
Prior to 1973, this court had 16 Judges. Another Judge was added this year (L. 1973, ch. 777, eff. April 1, 1973).
The subject Act relating to the Court of Claims (eff. July 1, 1973) provides as follows: “Such court shall consist of (a) *879 seventeen judges, who shall be appointed by the Governor, by and with the advice and consent of the senate and (h) such number of additional judges not exceeding sixty-eight as shall be appointed by the governor, by and with the advice and consent of the senate prior to July first, nineteen hundred seventy-four„33 (Emphasis added.)
Section 26 of Article VI provides for temporary assignments of Judges to other courts. On the Court of Claims, it states (§ 26, subd. b);
65 b, A judge of the court of claims may perform the duties of his office or hold court in any county and may be temporarily assigned to the supreme court in any judicial district33 (emphasis added), ° C: °
(t k. While temporary assigned pursuant to the provisions of this section, any judge or justice shall have the powers, duties and jurisdiction of a judge or justice of the court to which assigned.33 (Emphasis added.)
In the real sense, that part of the Act providing for these extra Judges was not for the purpose of alleviating the workload in the Court of Claims. On this score it is noteworthy that the same Legislature which passed the Act saw fit to add only one Judge to the permanent bench of this court.
The 68 Court of Claims Judges will not sit in the Court of Claims but will be assigned to the Criminal Part of the Supreme Court. They are to used mainly for the purpose of carrying out the 66 emergency dangerous drug control program.33 If no such program existed there would be no need to appoint these extra Judges.
Section 26 provides the method for utilizing existing judicial manpower to alleviate crowded conditions in various courts. It contemplates the transfer of Judges already serving in their respective courts, to which they shall return after their temporary assignment shall have been terminated.
Petitioners argue that this transfer section was enacted as a means for circumventing constitutional provisions for the election of Supreme Court justices, and limitation of their number. And' that the effect of the act providing for extra Court of Claims Judges is to take from the people their right under the Constitution to nominate candidates for the Supreme Court through their elected representatives in judicial conventions and to vote for them on Election Day. Further it is not a valid exercise of legislative powers, that the rights of the people under the Constitution may not be disregarded in the manner attempted by the challenged legislation, and therefore *880 the part of the act providing for extra Court of Claims Judges is in violation of the Constitution, and the existence of an emergency does not require the bypassing of relevant constitutional provisions.
It is axiomatic that courts are not concerned with the policy, wisdom or expediency of legislation. They fall within the province of the Legislature. Its office is to ascertain and declare whether the legislation is in accordance with or in contravention of the provisions of the State Constitution. Where the means adopted by the Legislature are not prohibited, the court may not inquire into the degree of other necessity. The petitioners claim they have made a sufficient showing of unconstitutionality on two sections of the Act.
They make other challenges but they are not of sufficient merit and do not require comment.
Respondent has advanced several grounds for dismissal of the petition. Only one requires consideration, petitioners’ lack of standing.
Respondent argues that the constitutionality of a State statute may be challenged only by those personally aggrieved. Otherwise stated, a party bringing the action must suffer “ a special injury different from that suffered by the public at large ” (Glen v. Rockefeller, 61 Misc 2d 942, 944, affd. 34 A D 2d 930).
The rule was first enunciated in 1821 in Butler v. Kent (19 Johns, ch. 223, 226) and followed in Doolittle v. Supervisors of Broome County (18 N. Y. 155); Schieffelin v. Komfort (212 N. Y. 520) and Bull v. Stichman (273 App. Div. 311, affd. 298 N. Y. 516).
In recent times, the Court of Appeals has upheld the validity of that rule (see St. Clair v. Yonkers Raceway, 13 N Y 2d 72 [decided on a 4-3 vote]; Posner v. Rockefeller, 26 N Y 2d 970). In the former, Judge Fuld wrote a dissenting opinion joined in by two other dissenters, and in the latter, all Judges concurred, but three under constraint of St. Clair (supra). Matter of Spillane v. Katz (25 N Y 2d 34) would appear to be a deviation from the rule. There, the court despite a finding that the petitioners had no standing to sue, did nevertheless decide the merits of the constitutional issue. However, as is apparent from the first paragraph of the opinion, the court answered the critical questions to avoid u troublesome consequences ” if the applications were disposed of only “ on the basis of the procedural arguments advanced”. They said (p. 36): “ Although the petitioners-respondents do not have standing to sue and have failed to join all the necessary parties, since the appellants have *881 submitted to us the merits of the constitutional issue inherent in the determination made by the Commissioner of Elections, we shall decide it. In these cases, in view of the troublesome consequences that surely would arise in regard to the vaEdity of elections in the former Municipal Court Districts, the tenure of the elected Judges and the legality of their orders and judgments if the petitions were dismissed on the basis of the procedural arguments advanced, we shall answer the critical question whether elections must be held in the former Municipal Court Districts for vacancies created by the expiration of terms of Judges who were elected from such districts.”
A legislative usurpation does not change character when it is challenged by a stranger; and judicial restraint thereon remains a “ judicial function ”, not an “ intrusion ”, though undertaken at the call of one without a judicial stake.
However, it is for the higher courts to open the door and determine, in light of Spillane v. Katz (supra), whether the principle of judical restraint should be exercised in the circumstances herein (cf. Silver v. Great Amer. Ins. Co., 38 A D 2d 932).
Further, courts of first instance should not exercise transcendent powers of declaring an act of the Legislature unconstitutional, except in rare cases involving Efe and liberty (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150).
Because the determination as to the constitutionality of the challenged sections may give rise to serious consequences, the resolution should rest with the higher courts.
■ Under constraint of Posner v. Rockefeller (26 N Y 2d 970, supra), St. Clair v. Yonkers Raceway (13 N Y 2d 72, supra) and matter of Donohue v. Cornelius (17 N Y 2d 390, 396), a declaration is made only that petitioners lack standing to sue, and for that reason this petition for declaratory judgment falls.